IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY D. JUSTICE, II,<br><br>    Plaintiff,<br><br>v.<br><br>MAGELLAN HEALTH, INC., STEVEN J. SHULMAN, SWATI ABBOTT, CHRISTOPHER J. CHEN, KEN FASOLA, PETER A. FELD, MURAL R. JOSEPHSON, SCOTT MACKENZIE, LESLIE V. NORWALK, and GUY P. SANSONE,<br><br>    Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

**NATURE OF ACTION**

1. On January 4, 2021, Magellan Health, Inc. ("Magellan" or the "Company") entered into an agreement (the "Merger Agreement") to be acquired by Centene Corporation ("Parent") and Mayflower Merger Sub, Inc. ("Merger Sub") (together, "Centene") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, Magellan's stockholders will receive $95.00 per share.

3. On February 19, 2021, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8. Plaintiff is and has been continuously throughout all relevant times the owner of Magellan common stock.

9. Defendant Magellan is a Delaware corporation. Magellan's common stock is traded on the NASDAQ under the ticker symbol "MGLN."

10. Defendant Steven J. Shulman is Chairman of the Board of Directors of Magellan (the "Board").

11. Defendant Swati Abbott is a member of the Board.

12. Defendant Christopher J. Chen is a member of the Board.

13. Defendant Ken Fasola is Chief Executive Officer and a member of the Board.

14. Defendant Peter A. Feld is a member of the Board.

15. Defendant Mural R. Josephson is a member of the Board.

16. Defendant Scott MacKenzie is a member of the Board.

17. Defendant Leslie V. Norwalk is a member of the Board.

18. Defendant Guy P. Sansone is a member of the Board.

19. Defendants identified in ¶¶ 10-18 are referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

20. The Company manages the fastest growing, most complex areas of health, including special populations, complete pharmacy benefits, and other specialty areas of healthcare.

21. On January 4, 2021, Magellan entered into the Merger Agreement, under which Magellan's stockholders will receive $95.00 per share.

22. The press release announcing the Proposed Merger provides as follows:

Centene Corporation (NYSE: CNC) and Magellan Health, Inc. (NASDAQ: MGLN) today announced that they have entered into a definitive merger agreement under which Centene will acquire Magellan Health for $95 per share in cash for a total enterprise value of $2.2 billion. The transaction, which was unanimously approved by the Boards of Directors of both companies, will broaden and deepen Centene's whole health capabilities and establish a leading behavioral health platform. The combined platform lays the foundation by which the company will continue to invest and innovate for its members, enabling improved health outcomes and faster, diversified growth.

The combination brings together the companies' complementary capabilities in behavioral health, specialty healthcare and pharmacy management. As a result of the transaction, Centene will establish one of the nation's largest behavioral health platforms across 41 million unique members with enhanced capabilities to deliver better health outcomes for complex, high-cost populations. Magellan Health will also add to Centene's leadership in government sponsored healthcare, bringing 5.5 million new members on government-sponsored plans. Magellan Health also provides specialty health services for 18 million third-party customer members in addition to Centene's own members. Furthermore, the transaction adds 2 million PBM members and 16 million medical pharmacy members, enhancing the scale of Centene's pharmacy platform with leading capabilities in specialty drug management. As part of Centene's Health Care Enterprises, Magellan Health will continue to independently support its existing customers and pursue growth opportunities. In addition, the transaction will create attractive shareholder returns through enhanced service capabilities, cross-sell opportunities and increased engagement with third-party customers. []

**Organization and Leadership**

Ken Fasola, CEO of Magellan Health, and other members of Magellan Health's leadership team have agreed to join Centene to provide continuity to Magellan Health's strategy and leadership.

**Timing and Required Approvals**

The transaction is subject to clearance under the Hart-Scott Rodino Act, receipt of required state regulatory approvals, the approval of the definitive merger agreement by Magellan Health's stockholders and other customary closing conditions. In connection with the transaction, affiliates of Starboard Value LP, which own approximately 9.4% of Magellan Health's outstanding shares of common stock in the aggregate, have entered into a merger support agreement whereby they have agreed to vote their shares in favor of the transaction at Magellan Health's special meeting.

The transaction is not contingent upon financing. Centene intends to primarily fund the cash portion of the acquisition through debt financing, and J.P. Morgan has provided a $2.381 billion bridge financing commitment. Upon closing, Centene expects its debt-to-capital ratio to be in the low 40% range, and intends to use its strong earnings and cash flows to achieve its targeted debt-to-capital ratio in the upper 30% range within 12 to 18 months post close.

Centene and Magellan Health expect to complete the transaction in the second half of 2021.

**Advisors**

Allen & Company LLC, J.P. Morgan Securities LLC and Barclays are serving as financial advisors to Centene, and Skadden, Arps, Slate, Meagher & Flom LLP is serving as its legal counsel. Goldman Sachs & Co. LLC and Guggenheim Securities, LLC are serving as financial advisors to Magellan Health, and Weil, Gotshal & Manges LLP is serving as its legal counsel.

23.     On February 19, 2021, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

Financial Analyses

24.     The Proxy fails to disclose material information regarding the financial analyses performed by Goldman Sachs & Co. LLC ("Goldman") and Guggenheim Securities, LLC

("Guggenheim"), Magellan's financial advisors. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion and the key inputs and range of ultimate values generated by those analyses must be fairly disclosed.

25. The Proxy fails to disclose the following regarding Goldman's Illustrative Discounted Cash Flow Analysis: (i) the inputs and assumptions underlying the discount rates and perpetuity growth rates; (ii) the line items used to calculate unlevered free cash flows; (iii) the terminal values; (iv) the basis for applying terminal year EBITDA exit multiples of 6.5x to 8x; (v) the number of fully diluted shares of Magellan common stock; and (vi) net debt.

26. The Proxy fails to disclose the following regarding Goldman's Illustrative Present Value of Future Share Price Analysis: (i) the basis for applying illustrative NTM P/E multiples of 16.0x to 24.0x; and (ii) the inputs and assumptions underlying the discount rate.

27. The Proxy fails to disclose the following regarding Goldman's Premia Paid Analysis: (i) the observed transactions; and (ii) the premiums paid in each of the observed transactions.

28. The Proxy fails to disclose the following regarding Goldman's Selected Precedent Transactions Analysis: (i) the closing dates of the transactions; and (ii) the total values of the transactions.

29. The Proxy fails to disclose the following regarding Guggenheim's Discounted Cash Flow Analysis: (i) the inputs and assumptions underlying the discount rates and perpetuity growth rates; (ii) the terminal values; and (iii) the line items used to calculate unlevered free cash flows.

30. The Proxy fails to disclose the following regarding Guggenheim's Selected Precedent Merger and Acquisition Transactions Analysis: (i) the closing dates of the transactions; and (ii) the total values of the transactions.

31. The Proxy fails to disclose the following regarding Guggenheim's Selected Publicly Traded Companies Analysis: the basis for selecting trading price/adjusted earnings per share multiples of 13.0x to 18.0x.

32. The Proxy fails to disclose the following regarding Guggenheim's Wall Street Equity Research Analyst Stock Price Targets analysis: (i) the price targets observed; and (ii) the sources of the price targets.

Financial Projections

33. The Proxy fails to disclose material information regarding Magellan's financial projections. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by a company's financial advisor in support of its fairness opinion.

34. The Proxy fails to disclose the following regarding Magellan's financial projections: (i) the line items used to calculate unlevered free cash flow; and (ii) the line items used to calculate EBITDA.

Background of the Proposed Merger and Potential Conflicts of Interest

35. The Proxy fails to disclose how many confidentiality agreements executed by Magellan include don't ask, don't waive ("DADW") standstill provisions, and whether the DADW provisions are still in effect and presently precluding any potential counterparty from submitting a topping bid for Magellan. The Proxy also fails to disclose the circumstances under which the Board is permitted to waive any standstill provisions.

36. The Proxy fails to disclose the timing and nature of the past services Goldman provided to Magellan and its affiliates.

37. If disclosed, the omitted information would significantly alter the total mix of information available to Magellan's stockholders.

## COUNT I

**Claim Against the Individual Defendants and Magellan for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

38. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

39. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

40. Magellan is liable as the issuer of these statements.

41. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

42. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

43. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

44. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

45. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

46. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

47. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

48. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of Magellan within the meaning of Section 20(a) of the Exchange Act as alleged herein.

50. Due to their positions as officers and/or directors of Magellan and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

52. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

53. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Proxy.

54. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

55. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

56. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

57. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: March 11, 2021 **GRABAR LAW OFFICE**

By: _____
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*